UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS L. COUNTER, | ) | CASE NO.  1: 09 CV 1099 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OF OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

This is an action for judicial review of the final administrative decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Pursuant to Local Rule 72.2(b), this matter was referred to Magistrate Judge McHargh for the preparation of a Report and Recommendation (R&R). On March 12, 2010, Magistrate Judge McHargh submitted his R&R, recommending that the decision of the Commissioner be affirmed. (Doc. 20.)

Plaintiff filed objections to the R&R (Doc. 21), to which the Commissioner has not responded. For the reasons stated below, the R&R is ACCEPTED and the final decision of the Commissioner is affirmed.

**I. Standard of Review**

District courts conduct *de novo* review of those portions of a magistrate judge's R&R to which specific objections are made. 28 U.S.C. § 636(b)(1). However, in social security cases,

1

judicial review of a decision by the Commissioner is limited to determining whether the decision is supported by substantial evidence based upon the record as a whole.  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  The substantial evidence standard is met if "a reasonable mind might accept the relevant evidence as adequate to support a conclusion."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  If substantial evidence supports the Commissioner's decision, the court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Id*.

**III. Analysis**

In February 2004, Plaintiff filed an application for DIB and SSI, alleging disability onset beginning in November 2003.  Plaintiff's claims were denied initially and upon reconsideration.  Upon Plaintiff's written request, a hearing was held before Administrative Law Judge Stanley Hogg on October 18, 2005.  By decision dated February 22, 2006, Judge Hogg found Plaintiff not disabled.  The Appeals Council vacated Judge Hogg's decision, remanding the case for further consideration.[1]

On October 16, 2007, a supplemental hearing was held before Administrative Law Judge Morley White.  Vocational expert Debra Lee testified at the hearing.

ALJ White applied the five-step sequential analysis for making a disability determination.  *See* 20 C.F.R. § 404.1520.  The ALJ determined that Plaintiff was not engaged in

---

[1] Specifically, the Appeals Council ordered that: further consideration be given to the examining source opinion; Plaintiff's mental impairment be further evaluated with specific findings and appropriate rationale; further consideration be given to Plaintiff's residual functional capacity; further evidence from a vocational expert be obtained and considered to determine whether Plaintiff may be able to perform his past relevant work as a drill press operator.

substantial gainful activity and had a severe impairment, specifically, borderline intellectual functioning. The ALJ found that borderline intellectual functioning was Plaintiff's only severe impairment and rejected Plaintiff's arguments that he suffered from other severe impairments, namely, eye problems, intermittent explosive disorder, personality disorder, depression, and adjustment disorder as opined by consultative psychologist Mitchell Wax. The ALJ reasoned:

> Records from the Ohio Rehabilitation Services Commission indicate that [Plaintiff] received a prescription for corrective glasses (Ex.9F p.10). Consultative psychologist Mitchell Wax, Ph.D., examined [Plaintiff] on April 23, 1977, and said [Plaintiff's] eyes did not focus during the exam. In offering limitations, however, Wax did not mention the eyesight as a limiting factor (Ex.11F; see also 7F). As such, there is no opinion evidence from a treating or examining physician that [Plaintiff] has any limitations because of his eye problems. Additionally, he has worked part-time fairly consistently since his alleged onset date and did not report his eyesight as a reason he could not work. For these reasons, and because the appeals council did not find it so, I find that his lazy eye is a non-severe impairment that places no more than a minimal limitation on his ability to perform basic work-related activities.
>
> As discussed, [Plaintiff's counsel] also alleged that [Plaintiff] has intermittent explosive disorder, personality disorder, depression, and adjustment disorder that result in functional limitations. With the exception of the depression, [Plaintiff's counsel] relied on Wax's consultative examination. As for the depression, he relied on a consultative examination by psychologist Richard Davis, Ph.D., dated April 17, 2003. While Dr. Davis did diagnose depression, he said the depression was "mild-to-moderate." Additionally, Davis did not offer any limitations in terms of [Plaintiff's] mental residual functional capacity. He offered a global assessment functioning level (GAF) of 60 but said that [Plaintiff] could work "when there is a high demand" but could not work when demand drops off. Davis said [Plaintiff] told him he had no problems getting along with coworkers. Because Davis said [Plaintiff] could work, and because he offered no functional limitations, and because his examination predates [Plaintiff's] alleged onset date, I find that his diagnosis of depression is not supported by his own examination or by the evidence of record.
>
> As for the intermittent explosive disorder, personality disorder, and adjustment disorder, [Plaintiff's counsel] relies on Wax's assessment. Davis mentioned adjustment disorder as well, but I give that diagnosis no weight for the same reasons I gave his diagnosis of depression no weight. Wax seemed to base these diagnoses on [Plaintiff's] report of having difficulty getting along with authority

>figures and the fact that [Plaintiff] appeared angry at the examination. However, Wax reported that [Plaintiff] gets along with family, socializes regularly with friends, takes care of his child, and attends free meals at local churches (Ex. 11F). Additionally, the evidence shows that [Plaintiff] worked nearly five years as a drill press operator without incident, losing his job only when he was laid off due to downsizing. As such, the evidence does not support Wax's diagnoses on this point. Again, I note that the appeals council did not disturb Judge Hogg's findings as to what severe impairment is present.

(Tr. 18.)

At step three of the disability analysis, the ALJ found that Plaintiff's borderline intellectual functioning did not meet a Listing. The ALJ rejected Plaintiff's arguments that he met Listing 12.05C and 12.05D.[2] In this regard, the ALJ again rejected the opinion of Dr. Wax:

---

>[2]Listing 12.05 pertains to mental retardation and provides in pertinent part:
>
>12.05 <u>Mental Retardation</u>: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
>The required level of severity for this disorder is met when the requirements in A,B,C, or D are satisfied.
>. . .
>C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
>
>D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>1. Marked restriction of activities of daily living; or
>2. Marked difficulties in maintaining social functioning; or
>3. Marked difficulties in maintaining concentration, persistence, or pace; or
>4. Repeated episodes of decompensation, each of extended duration.
>
>20 C.F.R. Pt. 404, Subpt. P, App.1, §12.05. The regulations explain that a claimant meets the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria . . . ." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> [Plaintiff's counsel] argues that [Plaintiff] meets either 12.05C or 12.05D (Ex. 31E).  I find his arguments without merit.  As stated above, [Plaintiff] does not have an additional physical or other mental impairment to fulfill the second prong of 12.05C.  Wax found marked restrictions with social functioning and concentration, persistence, and pace.  If I accept these restrictions, [Plaintiff] would meet 12.05D.  I do not accept these restrictions, however, for the reasons discussed where I assess Wax's opinion.

(Tr. at 19.)

Instead, contrary to Wax's opinion, the ALJ found Plaintiff was mildly limited with restrictions of activities of daily living; moderately limited with difficulties maintaining social functioning; and moderately limited maintaining concentration, persistence, and pace.  Plaintiff had no periods of decompensation.

The ALJ then translated his findings into work-related functions in determining Plaintiff's residual functional capacity (RFC).  The ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:  he is limited to simple, routine, one, two, and three step tasks; he is limited to low-stress work that does not involve arbitration, negotiation, confrontation, influencing or responsibility for the safety or welfare of others; he is limited to work requiring no more than rudimentary reading, no math and simple instructions.  Based on the testimony of the vocational expert, the ALJ found that Plaintiff had the RFC to perform both his past relevant work and other jobs existing in significant numbers in the national economy and, therefore, was not disabled.  The ALJ's determination became the final decision of the Commissioner.

In briefing before the Magistrate Judge, Plaintiff maintained that the ALJ erred in finding that Plaintiff's vision impairment did not constitute a severe impairment and that Plaintiff's mental impairment did not meet Listing 12.05C or 12.05D.  However, after review, Magistrate

Judge McHargh found the ALJ's decision was supported by substantial evidence.

Plaintiff first objects to the Magistrate Judge's determinations as to his vision impairment. Plaintiff objects to the Magistrate Judge's determination that Plaintiff's vision impairment was not a distinct "severe" impairment sufficient to satisfy Listing 12.05(C)'s requirement that he have an "additional and significant work-related limitation of function." Plaintiff contends his "impairment(s) other than mental retardation satisf[y] Listing 12.05(C)'s requirement for an 'additional and significant work-related limitation of function.'"

However, the reasoning and analysis of the Magistrate Judge as to Plaintiff' vision impairment is persuasive and correct. The Magistrate Judge correctly determined that the ALJ was justified in determining that the Plaintiff's vision impairment was not severe. The Court accepts and adopts the reasoning and conclusions of the Magistrate Judge as to Plaintiff's vision impairment. The Court also accepts the Magistrate Judge's determination that Plaintiff did not have a combination of impairments sufficient to satisfy Listing 12.05C's requirement of an additional and significant work-related limitation of function. As the Magistrate Judge found, the ALJ properly considered, and was not obligated to accept, Dr. Wax's conclusions.

Plaintiff next argues: "The Magistrate Judge recommended that the Court hold that the evidence showed that [Plaintiff] did not have the requisite deficits in adaptive functioning for the purpose of Listing 12.05(C)." Plaintiff argues that whether he had the requisite deficits "is a medical matter properly addressed by a medical professional on remand." However, remand is not necessary. The Magistrate Judge found that Plaintiff's "activities *may* demonstrate that Plaintiff did not have the requisite defects in adaptive functioning" for purposes of meeting the diagnostic description of Listing 12.05C; however, the Magistrate Judge went on to find that

"whether or not Plaintiff has satisfied the requirements of the diagnostic description . . . Plaintiff has failed to meet all of the requirements of Listing 12.05C" because substantial evidence supports the ALJ's determination that Plaintiff's alleged vision impairment is not severe. (R&R at 18-19) (emphasis added). As stated above, the ALJ's determination that Plaintiff's alleged vision impairment is not severe is supported by substantial evidence. Therefore, it is not necessary to remand the matter to determine whether Plaintiff has the requisite deficits in adaptive functioning for the purposes of the introductory paragraph of Listing 12.05.

Finally, Plaintiff argues the Magistrate Judge supplied an improper *post hoc* rationalization for failing to give adequate weight to the fact that the Commissioner previously determined that Plaintiff was disabled due to mental retardation. (From about 1996 to 1999, Plaintiff received SSI based on mental retardation. Plaintiff stopped receiving SSI because he became financially ineligible to receive such benefits due to the fact that he engaged in work activity.) This argument is also not persuasive. The Magistrate Judge properly addressed the arguments made before him and properly determined that the ALJ was not bound by the Commissioner's prior determination of mental retardation as to Plaintiff's entitlement to benefits in this case. The Magistrate Judge findings and conclusions as to the Commissioner's prior award of benefits is persuasive and adopted.

### III.  Conclusion

For the foregoing reasons, all of Plaintiff's objections to the R&R are overruled. The ALJ's determination denying Plaintiff's application for benefits is supported by substantial evidence. The R&R, recommending that the decision of the Commissioner be affirmed, is accepted. For the reasons stated above and those stated by the Magistrate Judge in the R&R, the

Commissioner's decision denying Plaintiff's application for benefits is hereby affirmed.

    IT IS SO ORDERED.


Date:   June 11, 2010                            */s/ John R. Adams*
                                                      JOHN R. ADAMS
                                                      United States District Judge